```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

DUSTIN LOVELL,

               Plaintiff,               09-CV-0542S

v.                                               **DECISION
and ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____

## **INTRODUCTION**

    Plaintiff Dustin Lovell ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), claiming that the Commissioner incorrectly denied Plaintiff's application for Supplemental Security Income ("SSI") benefits. Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Brian Kane, which denied Plaintiff's SSI benefits, was erroneous and contrary to law as it was not supported by substantial evidence within the record.

    Now before the Court is the Commissioner's motion for judgment on the pleadings and Plaintiff's cross-motion for a judgment on the pleadings, both pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g). For the reasons set forth

below, the Plaintiff's cross-motion for a judgment on the pleadings is denied, and the ALJ's decision is affirmed.

## BACKGROUND

On August 8, 2006, petitioner was a then 18 year-old unemployed male who filed an application for Supplemental Security Income under Title XVI of the Act. Plaintiff claims an alleged disability onset date of December 27, 1998.[1] Plaintiff's applications for benefits were denied on December 18, 2006, and he then requested a hearing before an ALJ, which was held on December 18, 2008. (R. 10, 29-58)[2]. In a decision dated February 4, 2009, the ALJ determined that the Plaintiff was not disabled. The ALJ's decision became final when the Social Security Appeals Council denied Plaintiff's appeal on May 18, 2009. On June 12, 2009, Plaintiff timely filed this action pursuant to §405(g) of the Act for review of the final decision of the Commissioner.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Disability Insurance Benefits and Supplemental Security Income. Additionally, the section

---

[1] Although Plaintiff alleges an onset date of December 27, 1998 were he to be found to be disabled, he would be eligible to receive benefits only from September 2006. 20 C.F.R. §416.335.

[2] Citations to "R." refer to the Record of the Administrative Proceedings

directs that when considering such claims, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex.1983) (citation omitted). Defendant asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

## II. **The ALJ's decision to deny the Plaintiff benefits was supported by substantial evidence within the record and proper as a matter of law**

The ALJ found that Plaintiff was not disabled within the meaning of the Act. A disability is defined within 42 U.S.C. § 423(d) as to be the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d) (1991).

In determining the threshold question of Plaintiff's disability, the ALJ adhered to the Administration's 5-step sequential analysis for evaluating assignments of disability benefits.[3] See 20 C.F.R. § 404.1520. Having gone through the evaluation process, the ALJ found, among other things, that: (1) Plaintiff was not currently engaged in substantial gainful activity, and had not since August 8, 2006, the application date; (2) Plaintiff suffered from the following "severe impairments": anxiety, obsessive compulsive tendencies and depression; (3) Plaintiff's impairments did not meet or equal those listed

---

[3] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity ("RFC") to perform his past work; and (5) determine whether the claimant can perform other work. See id.

within 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.925 and 416.926 et seq.); (4) Plaintiff does not have any past relevant work that amounts to substantial gainful activity; and (5) Considering Plaintiff's residual functional capacity, as well as other qualifications such as age, education, and work experience, there exist jobs within the national economy that Plaintiff can perform. (R. 12-18).

### A. **The substantial medical evidence within the record supports the ALJ's decision that Plaintiff was not disabled**

The medical evidence within the record shows that Plaintiff had sought emergency room services at the Auburn Memorial Hospital ("AMH") on April 11, 2005. (R. 243-46). During his hospitalization, Plaintiff stated that he had run out of his medication (Paxil) and his anxiety has been "driving [him] nuts." (R. 244). Plaintiff received a diagnosis of an anxiety attack and was prescribed Ativan for his anxiety. (R. 245-46). On May 2, 2005, Plaintiff returned to AMH for treatment of a sore throat. (R. 241-42).

Plaintiff again presented himself at AMH on May 22, 2006 with an admitting diagnosis of an "illness." (R. 235). Plaintiff stated that he was not currently taking his medication (Paxil) but he was not in any present distress and all examining procedures were normal. Id. His chief complaint on this visit was nausea and

diarrhea and the clinical doctor opined "r/o parasitic infections, diarrhea." (R. 239).

On May 30, 2006, Plaintiff was seen at the Newark-Wayne Community Hospital ("NWCH") for complaints of weakness, lightheadedness and tunnel vision. (R. 247-66). Plaintiff had not been taking his Paxil, however, his prescription was renewed and he was instructed to follow-up at Wayne Behavioral Health Services ("WBHS"). (R. 250, 266).

Nurse Practitioner ("NP") Roberta Korich examined Plaintiff at the Clyde Family Health Center ("CFHC") on June 20, 2006 with a chief complaint of anxiety. (R. 300). NP Korich examined Plaintiff due to his new patient status and assessed Plaintiff with anxiety and GERD. Id. The nurse increased Plaintiff's Paxil dosage and prescribed Prevacid for control of the GERD. Id.

NP Korich saw Plaintiff on July 11, 2006 for a follow-up visit. (R. 298). The nurse noted that the increase in Paxil had a negative effect on Plaintiff so the original dosage of 20 mg was recommended. Plaintiff also claimed his anxiety was controlled fairly well and the Prevacid is properly controlling his GERD as well. Id. Plaintiff's assessment was to continue with the Paxil and to obtain further testing regarding his abdominal pain. Id.

On July 26, 2006, Plaintiff had returned to CFHC and Kenneth Mathis, a registered physician assistant, reported that Plaintiff stopped taking his medicine, and had experienced negative effects

including weakness, lightheadedness, photophobia, and vision problems. (R. 299). Other than a slightly elevated blood pressure, all other clinical findings were generally normal. Id. The assessment was to put plaintiff on a medical trial of Lexapro for his fatigue as well as hydroyzine, and to see Plaintiff in a "couple of weeks." Id.

Plaintiff again sought emergency treatment at NWCH for a tooth ache. (R. 267-80). Plaintiff was given Vicodin and Clindamycin as an antibiotic. (R. 274). He was seen again for his tooth ache on September 19, 2006 and was given Vicodin, a prescription for Clindamycin and a dental referral. (R. 284, 294).

Mr. Mathis (physician assistant) saw Plaintiff again on September 19, 2006 when he complained of anxiety and dental infection. (R. 297). Plaintiff stated that the Lexapro was helping with his anxiety, despite being reluctant to take the medication. Id.

Plaintiff was seen by consultative psychiatrist Dr. John Thomassen on November 3, 2006. (R. 313-16). Upon examination, Dr. Thomassen reported Plaintiff could relate adequately, and was cooperative. (R. 314). Plaintiff's speech was normal, and his thought process was coherent and goal-directed, and there was no evidence of a thought disorder. His attention and concentration were intact, as were his recent and remote memory skills. (R. 315). Plaintiff's insight was fair and his judgment was

grossly adequate. Dr. Thomassen opined that Plaintiff was likely to have problems following directions, doing age appropriate tasks, coping with changes in his environment, learning in conjunction with his cognitive abilities and recognizing danger in his environment. Dr. Thomassen also opined that Plaintiff was likely to have problems relating with peers and adults. Lastly, Dr. Thomassen recommended counseling and medications because Plaintiff would benefit from these treatments. (R. 316).

Dr. Debbie Heit (also with CFHC) saw Plaintiff on November 16, 2006. (R. 318-20). Plaintiff disclosed to the doctor that he had not seen a psychiatrist in the past two or three years but that his current medication (Lexapro) was helping and he felt only a low level of anxiety. Dr. Heit noted Plaintiff took Hydroxyzine as needed and that he showed symptoms of general, mild anxiety. (R. 318). The doctor opined that Plaintiff did not seem to be completely regulated with Lexapro and, therefore, she recommended that he be seen for a full psychiatric evaluation.

Pursuant to a referral to WBHN from CFHC on December 7, 2006, Plaintiff spoke to staff member Joel Archer who noted Plaintiff wanted to but was unable to work. (R. 376). Upon a return visit to WBHN on February 2, 2007, Plaintiff received an assessment for their services. (R. 336). During Plaintiff's assessment, he was found to have a disheveled appearance, to be restless, have an anxious mood and excessive speech and circumstantial thoughts. (R.

343). Plaintiff was diagnosed with a Global Assessment Functioning ("GAF") score of 55, which indicates moderate symptoms or moderate difficulty in occupational or social functioning. Defendant's Brief at 16, footnote 6. Plaintiff was given an immediate treatment recommendation for verbal therapy with Mr. Archer twice a month in an attempt to reduce Plaintiff's anxiety. Id.

State agency review psychiatrist Dr. K. Prowda had reviewed Plaintiff's file on March 2, 2007. (R. 321-30). The doctor found that the Plaintiff's anxiety, obsessive compulsive disorder and dysthymic disorder were to be considered severe impairments, but however, the impairments did not meet or equal a Listing. (R. 321). Plaintiff had no issues in acquiring and using information, and moving about and manipulating objects. (R. 323-24). Plaintiff had little difficulty in attending and completing tasks, interacting and relating with others, caring for himself, and managing his health and physical well being. Dr. Prowda assessed any minor limitations in these areas as less than marked.

Plaintiff was evaluated by Dr. Merino D. Tavarez (form filled out on March 2, 2007), another doctor within CFHC, with regard to Plaintiff's mental functioning. (R. 327-30). According to Dr. Tavarez's report, Plaintiff's abilities to remember work procedures, to be aware of normal hazards and make necessary adjustments to avoid those hazards were good. (R. 327, 329).

Plaintiff's abilities to comprehend and carry out simple instructions, function independently on the job, exercise appropriate judgment, abide by occupational rules and regulations, make simple work-related decisions, and maintain social functioning, were fair. (R. 327-29). His abilities to tolerate customary work procedures in a work setting, concentrate and attend to tasks over an eight-hour period, complete a normal workday on a sustained basis, respond appropriately to co-workers, and remember detailed instructions, were poor. Also, Plaintiff's ability to respond appropriately to supervision, was in the range of fair to poor. (R. 328).

On May 22, 2007, Plaintiff again saw Dr. Heit for a prescription refill of Prevacid. (R. 323-33). Once Plaintiff had run out of his medication, he stated that his symptoms had returned. At this time, Plaintiff also told Dr. Heit that he was planning on leaving town for three weeks for his band tour, however, he had not experienced any medical issues. (R. 332). At this time, Dr. Heit evaluated Plaintiff and found his mood and affect to be normal, he was pleasant and cooperative, and he answered posed questions appropriately. Dr. Heit assessed Plaintiff to have general anxiety, depression and GERD.

From March 2007 to June 2007, Plaintiff continued treatment with WBHN. (R. 346-62, 373-75). Treating notes reflected that Plaintiff had a part-time job, and his individual therapist

encouraged him to apply to VESID. (R. 347). His therapist noted Plaintiff's strengths as his hobbies, but noted that his weaknesses consisted of anxiety and depression, and periodic panic attacks. Id.

Plaintiff was discharged from WBHN because he had missed numerous appointments and seemed to not be committed to his treatment. (R. 361).

When the ALJ had assessed all of the medical opinions as to Plaintiff's impairments, he appropriately found that Plaintiff's treating physician, Dr. Merino D. Tavarez, would not be afforded controlling weight due to the inconsistencies between the doctor's opinions and the persuasive medical evidence in the record. ALJ Kane explained that "nowhere else in the record is there any suggestion that the claimant is so significantly psychiatrically impaired as in Dr. Tavarez' statement." (R. 17). Additionally, the ALJ concluded that Dr. Tavarez did not have the benefit of longitudinal treatment of the Plaintiff to be able to opine as to Plaintiff's state of mind. Id.

The ALJ found that Dr. Thomassen's opinion of Plaintiff having difficulty following directions and problems relating to peers and adults to be supported by substantial evidence within the record. (R. 17). Moreover, the ALJ adopted the limitation findings by Dr. Thommassen within his Residual Functional Capacity ("RFC") evaluation of the Plaintiff. The ALJ properly gave this evaluation

great weight since it was not found to contradict any of the other treating and consultative medical examiner's opinions. It is well established within the Second Circuit that a consultative physician's opinion may serve as substantial evidence in support of an ALJ's finding in determining a claim of disability. Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983).

Since the medical record supports the conclusion that Plaintiff's condition is not of the severity required to qualify for benefits, a finding of not disabled is appropriate.

**B.  The ALJ properly assessed Plaintiff's credibility**

Examination of the record reveals that the ALJ properly evaluated Plaintiff's credibility and followed the criteria articulated within SSR 96-7p.

The ALJ correctly held that because Plaintiff's allegations as to his disability were inconsistent with the record as a whole, he could not be found to be credible. (R. 16).

The Plaintiff alleges that the ALJ did not properly assess his credibility in relation to his subjective complaints. Plaintiff's Brief at 14.  However, I find that the ALJ was correct in not affording weight to Plaintiff's subjective testimony for the reasons stated below.

Plaintiff claims to have depressive symptoms that include a fear of being alone, loss of memory, anger, and loss of concentration.  Despite these allegations, Plaintiff stated at the

Administrative Hearing that he had not sought any mental health treatment since March 2007. (R. 16, 50). The ALJ also stated that Plaintiff alleges a total disability due to his various medical conditions, however, Plaintiff states that during the course of the day, he would take care of his personal hygiene, fix himself meals, clean his home and pets, and do his laundry. (R. 16). Plaintiff also admits to socializing with friends and going to a tattoo shop on a daily basis. (R. 16, 157). Plaintiff also spends his time playing video games and participating in on-line poker tournaments. (R. 16, 57).

Though the ALJ discounted many of Plaintiff's subjective complaints, he did give weight to the plaintiff's claim of a limited ability to interact with others, which in turn resulted in a limitation of Plaintiff's RFC. (R. 17).

Also, despite his alleged impairments, Plaintiff was able to perform in a rock band, in front of a crowd, and reports never being nervous. (R. 16). There is evidence within the record that shows the Plaintiff not complying with his mental health medications as well as medical treatment recommendations to help manage his impairments. (R. 331, 347-48).

Plaintiff also states that the reason he is no longer working at the tattoo shop was because he did not make enough money, so he quit; he also was no longer a dishwasher or a landscaper because he "could not handle it" so he quit. (R. 16, 44-46). Despite not

being able to hold a job, and the recommendation from his case worker to obtain training from VESID, Plaintiff continued to be unemployed. (R. 56, 347).

Substantial evidence within the record establishes inconsistencies between Plaintiff's subjective complaints and the medical examiner's opinions. Both the medical records and the doctor's opinions support the ALJ's decision that Plaintiff's impairments do not reach the severity level of disability under the Act that would qualify the Plaintiff for SSI.

    C.    **<u>Substantial evidence within the record supports the ALJ's decision that Plaintiff retained the RFC to perform medium levels of work within the economy and was not disabled within the meaning of the Act</u>**

ALJ Kane appropriately held that Plaintiff retained the RFC to perform medium work with the following limitations: Plaintiff may require one-to-two step process work that requires little interaction with the public or with co-workers, with only occasional changes in the work setting and only occasional decision-making. (R. 15).

The ALJ correctly held that though the symptoms can reasonably be expected to derive from his impairments, Plaintiff's statements concerning intensity persistence and limiting effects were not credible to the extent they were inconsistent medical evidence and the RFC the ALJ had assigned as discussed above. (R. 16).

While evaluating Plaintiff's RFC, the ALJ considered Plaintiff's past work, and whether he was still able to perform the work. During this evaluation, the ALJ determined that Plaintiff's prior work does not amount to past relevant work due to the fact that any job Plaintiff held (drummer in a rock band, a dishwasher, and landscaper) did not amount to substantial gainful activity due to the short period of time each job was held. (R. 17). Accordingly, Plaintiff has no previous work to consider when determining whether he is capable of performing any form of substantial gainful activity within his limitations.

In determining the existence of other jobs in the national and local economy, the ALJ properly enlisted the help of Vocational Expert ("VE") Dr. Manzi. Initially, the ALJ relied upon Medical-Vocational Rule 203.25 to determine whether other jobs existed within the economy that Plaintiff could perform, however, given the limitations that the ALJ had established for Plaintiff's RFC, the ALJ consulted a VE to assist him in determining other work opportunities.

The ALJ posed a series of hypotheticals to the VE in which he asked whether "jobs exist in the national economy for an individual with claimants age, education, work experience and RFC." The VE's response listed many different job opportunities that the Plaintiff could perform including: hand packager, collator operator, and laundry sorter. (R. 18, 61-62).

Based on the objective medical evidence within the record, and the testimony of the VE, the ALJ properly held that the Plaintiff is capable of performing work that exists in significant numbers within the national economy. Accordingly, Plaintiff was properly found, based on substantial evidence in the record, to be "not disabled" within the meaning of the Act, and thus denied Supplemental Security Income.

## **CONCLUSION**

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings and deny Plaintiff's cross motion for judgment on the pleadings. Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                    s/Michael A. Telesca
                                     MICHAEL A. TELESCA
                                 United States District Judge

Dated:   Rochester, New York
         August 19, 2010